Henry August ARHELGER, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–9901–CR–30.

Court of Appeals of Indiana.

June 22, 1999.

Bernard G. Reisz, Evansville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Michael McLaughlin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Defendant-appellant Henry August Arhelger, Jr. ("Arhelger") appeals from his conviction for pointing a loaded firearm, a Class D Felony,[1] and his subsequent entry of judgment of conviction as a habitual offender.[2] We affirm.

---

1. IND. CODE § 35–47–4–3.

2. IND. CODE § 35–50–2–8.

## Issues

Arhelger raises three issues in his appeal, which we restate as

(1) whether the testimony of Jonathan H. Souba ("Suba")[3] was so inherently unbelievable, inherently improbable, and incredibly dubious that the jury's guilty verdicts cannot be sustained;

(2) whether it was error for the court to restrict Arhelger's cross-examination of Suba after Arhelger attempted to make an offer of proof; and

(3) whether it was error for the court not to grant a continuance during the trial when a witness could not be located.

## Facts and Procedural History

Our review of the record reveals the following relevant facts favorable to the judgment. At approximately 7:30 p.m. on February 27, 1997, Suba was walking on Franklin Street in Evansville. A white Honda automobile, which he recognized as one regularly driven by Arhelger, slowed down and pulled alongside him. Arhelger and his live-in girlfriend, Sonya Price ("Price") were in the car. Suba knew both Arhelger and Price; Price had previously lived next door to Suba in his apartment building, and they were "fairly good friends," but they had never dated romantically. Arhelger asked Suba how he was doing. Suba, who did not wish to speak to or associate with Arhelger, said only, "Hi," and kept walking. Arhelger, however, repeated his inquiry, to which Suba replied, "Fine," but kept walking; at that point, Arhelger and Price drove on. Suba continued toward his home, several blocks away, and again saw Arhelger and Price, who had pulled into the parking lot of a laundromat on Franklin Street. Suba decided to approach Arhelger. He explained at trial, "I wanted to tell [Arhelger] that I wanted to exercise my right to not associate with someone that I don't want to associate with...." Upon Suba's telling Arhelger that he did not want to be friends, Arhelger became very angry and called Suba a "bitch" and a homosexual. Suba retorted that he was not a homosexual,

but that Arhelger was. During the exchange, which lasted for about a minute, the two stood about three to four feet apart; Suba testified that he did not see Price during the exchange. Suba turned away and began walking toward his apartment. He then realized that Arhelger might be following him and headed past his apartment building and toward a public bar.

Arhelger had gotten back in his car and pulled into the parking lot directly to the west of the apartment building, blocking Suba's path. Suba started to walk around the car on the passenger side, but Arhelger quickly got out of his car and blocked Suba's way. He verbally accosted Suba, who did not respond; when Suba tried to go around him, Arhelger stepped in front of him, coming closer in what Suba perceived to be "like in an attempt at starting a fight or intimidation, at least, and then he stepped very close to me." Arhelger continued to verbally accost Suba, whose only response was to try to get around him from time to time; each time Arhelger would step in front of him. Ultimately, Arhelger shoved him.

In response to the shove, Suba sprayed red pepper spray into Arhelger's eyes. Arhelger then reached in his pocket, quickly pulled out a small, black, revolver-type handgun, and pointed it directly at Suba's abdomen. Suba, afraid of being shot, immediately turned around and ran. He ran in an arc, first to his right, then to his left, around the corner of a building in which a "Movies to Go" store was located. As he ran around the corner, he heard a noise that was "clearly a gunshot." Reasoning that he would be safer among people and that Arhelger would be less likely to shoot him if other witnesses were present, he ran into the Movies to Go store.

Two Movies to Go employees, Brandi Delaney ("Delaney") and Carman [sic] Rhodes ("Rhodes"), had heard the loud noise outside and remarked to each other that somebody had just been shot, or that perhaps a car had backfired. Immediately after they made

**3.** *Souba's name is spelled "Suba" throughout both parties' briefs and throughout the transcript;* we have chosen to follow suit.

these comments, Suba ran in and asked them to call the police because someone was shooting at him. Fearing that Arhelger might be angry or irrational enough to follow him into the store and shoot, he went into the store's restroom to hide, to avoid endangering any of the other customers.

Rhodes called the police, who arrived only minutes later.[4] Officer Tony Mayhue ("Officer Mayhue") of the Evansville Police Department was dispatched to the Movies to Go store, where he found Suba "in the bathroom squatted down," and appearing frightened. Suba told Officer Mayhue that "a gun was pulled on him by Mr. Arhelger and also a round was fired off." Officer Mayhue then went to Arhelger's address; Arhelger arrived approximately thirty minutes later and was arrested. To Officer Mayhue's knowledge, Arhelger's hand was not tested for powder, as is sometimes done to determine if a suspect has recently fired a gun. He also testified that no gun, bullet, or bullet casings were found at or near the crime scene, nor were any of those items found in Arhelger's apartment, car, or on his person. However, Officer Mayhue testified, he would not expect to find a shell casing if a revolver had been used.

Arhelger was tried by a jury on January 2, 1998. The State had listed Price as a witness and had attempted to subpoena her. Arhelger had listed her as a witness but did not attempt to subpoena her. At the conclusion of Suba's testimony, a colloquy was held outside the presence of the jury regarding the fact that although the sheriff had gone to two addresses given for Price, she had not been found. The State expressed a desire to continue the trial regardless of her availability; however, Arhelger's counsel stated, "She is crucial to our defense." At the conclusion of the State's case and outside the presence of the jury, the parties again discussed the unavailability of Price and the effect it would

have on Arhelger's defense. Arhelger's counsel asked for a continuance to "see if we can come up with her whereabouts." When asked by the court whether he had issued a subpoena for Price, counsel responded in the negative, explaining, "[s]he was listed as a State's witness and I had indicated that I intended to call all the witnesses that the State had listed as witnesses." After taking Arhelger's oral motion for continuance under advisement, then ascertaining from the sheriff's deputy that all the possible addresses for Price had been checked, the trial court denied the oral motion for continuance. Arhelger then rested, without presenting any evidence or calling any witnesses.[5] He was convicted that day of the offense of pointing a firearm; he then pleaded guilty to the habitual offender count against him. On September 11, 1998, he was sentenced to the Department of Correction for three years on Count I, pointing a loaded firearm.[6] That sentence was enhanced two years based on the habitual offender conviction, for a total sentence of five years to be served at the Department of Correction.

### Discussion and Decision

### I. Incredible Dubiosity of Suba's Testimony

■ The first issue raised by Arhelger on appeal is, ostensibly, that Suba's testimony is "unsubstantiated, inherently unbelievable, inherently improbable, and exhibits such incredible dubiosity that the jury's verdict cannot stand." However, as argued in his brief, Arhelger's "incredible dubiosity" argument is also an attempt to challenge the verdict as supported by insufficient evidence.

■ "In reviewing sufficiency claims, this [C]ourt does not reweigh the evidence or judge the credibility of the witnesses. We will consider only the evidence most favorable to the verdict, together with all reasonable and logical inferences to be drawn therefrom." *Mabbitt v. State*, 703 N.E.2d

---

4. Suba testified that he thought the police arrived two or three minutes after he went into the restroom; Delaney testified that it took the police "approximately five to ten minutes" to arrive.

5. The trial court had previously questioned Arhelger as to his knowing and voluntary decision not to testify in his own behalf.

6. The sentencing court found that there were aggravating circumstances (that Arhelger had a history of criminal or delinquent activity and that he had violated the conditions of probation) and no mitigating circumstances.

698, 700 (Ind.Ct.App.1998), citing *Vega v. State*, 656 N.E.2d 497, 504 (Ind.Ct.App.1995), *trans. denied* (1996). "The verdict will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact." *Id.* Under the "incredible dubiosity rule," a court will impinge upon the jury's responsibility to judge the credibility of the witnesses only when it has confronted "'inherently improbable' testimony or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.'" *Tillman v. State*, 642 N.E.2d 221, 223 (Ind.1994). "Application of this rule is limited to cases ... where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Id.*

Arhelger has improperly attempted to invoke this rule by arguing his interpretation of certain "facts," using statements such as, "Suba ... did not like Arhelger," and "Suba had a motive to be less than totally candid about the events of that night. His motive was to regain friendship with Price." He argues that Suba wanted "to get Arhelger out of the picture," and that "the red pepper spray incident is also fraught with ambiguities and incredibly dubious recollections and scenarios," because "the normal reaction [to being sprayed in the eyes by red pepper spray or mace] would be to want to rub your eyes, not put your hand in your pocket for a gun." Such argumentative speculation is not persuasive and cannot overcome the aforementioned standard we apply when addressing the broader question of sufficiency of the evidence.

Whether Suba liked Arhelger or not, or whether he wanted to be romantically involved with Price by "get[ting] Arhelger out of the picture" is immaterial at this stage of the proceedings: these are theories of defense and impeachment to be raised at trial and weighed by the jury. Suba testified that Arhelger's reaction to being sprayed in the eyes was to reach in his pocket, pull out a gun, and point it at him. That others might react to being sprayed in the eyes by rubbing them or screaming in pain does not render Suba's testimony "inherently unbelievable."

At trial, Officer Mayhue testified regarding his experience with pepper spray: "I have sprayed people it doesn't affect, and I have sprayed people who seemed to almost die from it the way they carry on ... [.]" Arhelger is simply attempting to impeach Suba after the trial with assertions such as, "the thought of possibly knocking the gun from Arhelger's hand never crossed Suba's mind." No amount of *post hoc* second-guessing as to what was going on in Suba's mind—or even in Arhelger's mind—can persuade us to substitute our judgment for that of the jury hearing the facts and evidence at trial.

█ Although Suba is the only witness to testify that he saw Arhelger point a gun at him, a conviction may be sustained by the uncorroborated testimony of the victim. *Lee v. State*, 529 N.E.2d 341, 342 (Ind.1988). Furthermore, Delaney testified that she and Rhodes both heard what could have been a gunshot and that they called the police at Suba's request. Suba's testimony is not inherently improbable, and the conviction is supported by the evidence.

## II. Offer of Proof on Cross–Examination

Arhelger's second argument concerns whether the trial court erred in restricting his cross-examination of Suba. The error allegedly arose during the following exchange, when Arhelger's counsel was questioning Suba:

Q. So, now, you walked back to your apartment there, but you decided to walk past it? Do you recall the statement you gave to the police, Evansville Police on that night of February 27th, a ten-page statement that you gave?

A. Yeah.

Q. And I think that you said at that point in time you were going to walk on past it and over to the Chances R?

A. Yeah, that was my intention.

Q. What is Chances R?

A. It's a bar that I knew was open and there would be people in there.

Q. What kind of a bar is it?

[Prosecuting Attorney]: Judge, Your Honor, I don't know . . . the relevance of what kind of bar it is.

[Arhelger's counsel]: Your Honor, since there has been some . . . I would offer to prove in regards to this, since this may be an issue as to sexual preferences here, this particular type of bar.

[By the court]: Objection sustained.

Arhelger argues on appeal that he was questioning Suba's credibility, and that the trial court impermissibly restricted that line of questioning. His argument, while ultimately unpersuasive, raises an evidentiary issue that must be addressed: first, whether Arhelger did indeed, as he now claims, make a valid offer to prove;[7] and second, whether an offer to prove is available or appropriate as an evidentiary technique on cross-examination.

■ "An offer to prove is the method by which counsel places before the trial court (and ultimately the reviewing court) the evidence he or she wishes to present, to allow the court to determine the relevancy and admissibility of the proposed testimony." 12 ROBERT LOWELL MILLER, INDIANA EVIDENCE § 103.110 at 27–28 (1984). Ind. Evidence Rule 103(a)(2) provides that "[e]rror may not be predicated upon a ruling . . . which excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked."

■ The Indiana Supreme Court's most recent statement of the requirements of an offer to prove is found in *Roach v. State*, 695 N.E.2d 934, 939 (Ind.1998). The opinion reiterates the requirement that "the substance of the evidence" must be made known to the court. However, "the offer to prove should [also] identify the grounds for admission of the testimony and the relevance of the testimony." *Id.* [citing *Hilton v. State*, 648 N.E.2d 361, 362 (Ind.1995); *Yoon v. Yoon*, 687 N.E.2d 201, 206 (Ind.Ct.App.1997); *United States v. Peak*, 856 F.2d 825, 832 (7th Cir.1988); 13B R. MILLER, INDIANA PRACTICE, COURTROOM HANDBOOK ON INDIANA EVIDENCE 10 (1998); 1 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE § 103.20[1], [2] (2d ed. 1997) ].

Our supreme court has also held that the purpose of an offer to prove is "to preserve for appeal the trial court's allegedly erroneous exclusion of evidence." *Bradford v. State*, 675 N.E.2d 296, 302 (Ind.1996). We note that this view of the purpose of an offer to prove is in keeping with the traditional trial practice of waiting until an objection has been sustained before tendering an offer to prove. However, we find that the offer to prove can also aid the trial court in ruling on the objection. *See* J. ALEXANDER TANFORD, INDIANA TRIAL EVIDENCE MANUAL 21 (4th Ed., 1998); Ind.Crim. Rule 6 ("Where, on the examination of a witness, an offer to prove is made, the same may be made either before or after the ruling of the trial court on the objection to the question propounded.").[8]

---

7. In scholarly literature and case law alike, an offer to prove is also commonly referred to as an "offer of proof." Thus, in this opinion, we will employ the terms interchangeably.

8. *Accord in many jurisdictions construing* Federal Rule of Evidence 103(a)(2), *United States v. Sheffield*, 992 F.2d 1164, 1169 (11th Cir.1993) ("The purpose of [the requirement of an offer of proof] is 'to alert the [trial] court and opposing counsel to the thrust of the excluded evidence, enabling them to take appropriate action,' *and* to construct a record appropriate for appellate review.") (emphasis added; internal citation omitted); *Polys v. Trans–Colorado Airlines*, 941 F.2d 1404, 1406–07 (10th Cir.1991) ("The plain language of F.R.E. 103(a)(2) requires that the judge be informed *contemporaneously* with the proponent's attempt to admit the evidence. This will be accomplished if the substance and purpose of

the evidence are apparent to the judge from the context in which it is offered, or an offer of proof either precedes or immediately follows the ruling so that the trial judge can reconsider.") (emphasis added); *United States v. Vest*, 116 F.3d 1179, 1189 (7th Cir.1997) ("This circuit does not require litigants to make formal offers of proof . . . but 'the record must show the equivalent: grounds for admissibility, the proponent must inform *the court and opposing counsel* what he expects to prove by the excluded evidence, and he must demonstrate the significance of the excluded testimony.' ") (emphasis added; internal citation omitted); *United States v. Clements*, 73 F.3d 1330, 1336 (5th Cir.1996) ("Although a *formal* offer is not required . . . the party must at least inform the trial court 'what counsel intends to show by the evidence and why it should be admitted . . . .' ") (emphasis added; internal citation omitted).

Judge Miller has summarized the three methods Indiana recognizes for making an offer to prove:

> (a) The offeror may use questions, but not answers: after an objection to a specific question to a witness has been sustained, examining counsel states what the testimony would be if the witness were allowed to answer.
>
> (b) Under certain circumstances, a question-and-answer format, as distinct from the question-and-offer format, may be employed.... Rule 103(b) also gives the court authority to direct an offer in question-and-answer form in any proceeding.
>
> (c) The offer to prove may be made without questions if the court indicates that no further testimony of the witness will be allowed with respect to the offered proof, or if neither the court nor opposing counsel require the use of questions.[9]

R. MILLER, INDIANA PRACTICE, COURTROOM HANDBOOK ON INDIANA EVIDENCE 10–11 (1999).

█ Clearly, none of these methods was employed by Arhelger's counsel during his cross-examination of Suba. Even if we were to concede that a "formal" offer of proof was not required (see discussion below), counsel still would have been required to make "the substance of the evidence" clear to the court and "[to identify] the grounds for admission of the testimony and the relevance of the testimony." *Roach*, 695 N.E.2d at 939. In the instant case, counsel's statement that "this may be an issue as to sexual preferences here, this particular type of bar," does not make the substance of the evidence clear to the court, nor does it even touch upon the grounds for its admissibility or the relevance of sexual preferences in determining whether Arhelger pointed a firearm at Suba. We find this not to be a valid offer of proof.

Although we hold that Arhelger did not make a valid offer of proof, there has been some confusion in Indiana as to whether it would have been appropriate or necessary for him to have made such an offer on cross-examination. Professor William F. Harvey wrote in 1996 that under Evid. R. 103(a)(2), "an offer to prove *now is required* in both direct and cross-examination, a major change in Indiana law." *Rules and Rulings for the Trial Lawyer*, 39–JAN. RES GESTAE 15. (Emphasis added.) Another commentator, agreeing with Professor Harvey, claims that Evid. R. 103(a)(2) "makes it clear that an offer of proof is required on cross-examination where the substance of the evidence is not clear from the context of the question." Ivan E. Bodensteiner, 27 INDIANA LAW REVIEW 1063, 1067 (1993). Professor Tanford, however, noted that notwithstanding the apparent clarity in the rule, "Indiana law is particularly murky on the status of offers to prove during cross-examination." TANFORD at 22 (1998). Professor Tanford was referring in particular to a 1998 case from this Court, *Vernon v. Acton*, 693 N.E.2d 1345 (Ind.Ct.App.1998), *trans. granted*, which "cited approvingly one of the old cases stating that an offer of proof is improper on cross-examination." TANFORD at 22 (1998). The "old cases" to which Professor Tanford refers held that an offer to prove on cross-examination was inappropriate on the theory that when cross-examining a witness, opposing counsel could not know with any certainty what the witness would say.[10] We find this

---

9. Regardless of the method used, an offer of proof must be made outside the presence of the jury. "In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." Ind. Evidence Rule 103(c). Much of the responsibility for shielding the jury from potentially inadmissible evidence falls to the trial judge, who can, of course, direct counsel to approach the bench or excuse the jury altogether. However, as discussed below, trial counsel must act in good faith when offering to prove, and should exercise discretion by asking to approach the bench before launching into an offer that might place evidence before the jury that the trial court and reviewing court could ultimately deem inadmissible.

10. An exemplar of this reasoning is found in *Burt v. United States* ("On cross-examination one is entitled to assign error on a refusal to permit relevant questions without stating what the answer would have been, because the cross-examiner is entitled to sift the adverse witness and is not supposed to know what he will testify."), 139 F.2d 73, 75 (5th Cir.1943), *cert. denied, Burt v. United States* and *Gilliland v. United States*, 321 U.S. 799, 64 S.Ct. 936, 88 L.Ed. 1087 (1944).

theory to be outmoded in today's trial practice. Given the modern approach to discovery, skilled counsel has a very good chance of knowing what his opposing counsel's witness is going to say.

Furthermore, since Professor Tanford's treatise was published, our supreme court has granted transfer of *Vernon v. Acton;* thus the case does not provide any guidance as to the propriety of an offer of proof on cross. Accordingly, we have looked to the Seventh Circuit and other jurisdictions interpreting Federal Rule of Evidence 103(a)(2), which is identical to Indiana's rule, or interpreting state versions analogous to the Federal Rule. There is no discernable trend among the circuits and state courts as to the propriety of an offer of proof on cross-examination.[11]

■■■■ We hold that it is appropriate and necessary for counsel to make an offer of proof on cross-examination if she believes the trial court has improperly limited a line of questioning or has erroneously sustained an objection by opposing counsel. The offer may be made immediately upon the judge's sustaining of opposing counsel's objection, or before the judge rules on the objection. While such an offer need not be "formal," it must contain the following three elements: it must make the substance of the excluded

evidence or testimony clear to the court; it must identify the grounds for admission of the testimony; and it must identify the relevance of the testimony. *See Roach,* 695 N.E.2d at 939.

The requirement that an offer of proof be made during cross-examination is not tantamount to giving cross-examining counsel a license to speculate as to what the witness will say if allowed to testify. Counsel must have a good-faith basis for the offer. If an offer is made with less than a good-faith basis, such as "fishing" or speculation, it will serve only to confuse the issues and potentially place inadmissible evidence before the jury. If, however, counsel recognizes that the purposes of an offer of proof are "to preserve for appeal the trial court's allegedly erroneous exclusion of evidence" (*Bradford,* 675 N.E.2d at 302) or to aid the trial court in ruling on an objection (TANFORD at 21), then an offer should not be tendered with less than a good-faith basis regarding what the witness would say.

In the instant case, although Arhelger's counsel intoned the words, "offer to prove," he did not satisfy any of the three elements set forth by our supreme court as requirements for a valid offer to prove. Thus, Arhelger has failed to create the necessary record for our review.[12]

---

11. As noted above, Evid. R. 103(a)(2) itself draws no distinction between direct and cross-examination. *Saltzman v. Fullerton Metals Co.,* 661 F.2d 647, 653, n. 8 (7th Cir.1981). Thus, the Seventh Circuit has held that "to preserve a claim of error in the exclusion of evidence, even on cross-examination, a party must make a proper offer of proof." *United States v. Hall,* 854 F.2d 1036, 1042 (7th Cir.1988).

The First Circuit has held that a trial court has discretion to preclude cross-examination into specific matters without an offer of proof "or other indication where such questions would lead," although "an offer of proof may be unnecessary to preserve an appeal of a trial court's exclusion of evidence in situations where the substance and materiality of the excluded evidence are obvious." *United States v. Peters,* 732 F.2d 1004, 1010 (1st Cir.1984). Such "other indication" would likewise probably suffice in Texas. *See, e.g., Virts v. State,* 739 S.W.2d 25, 29 (Tex.Crim.App.1987) (on cross-examination, when restricted by the trial court, counsel is "merely required to establish general subject matter he intended to question the witness about and explain why it should be admitted into evi-

dence"); *Love v. State,* 861 S.W.2d 899, 901 (Tex.Crim.App.1993) ("an informal bill will suffice as an offer of proof when it includes a concise statement of counsel's belief of what the testimony would show.").

A recent California case held that "even where cross-examination is involved, *the trial court may properly request* an offer of proof if an entire line of cross-examination appears to the court to be irrelevant to the issue before the court." *Los Angeles County Dep't of Children and Family Servs. v. Jerry V.,* 68 Cal.App. 4th 811, 817, 80 Cal.Rptr.2d 534, 537 (1998) (emphasis added).

12. Arhelger has advanced the related argument that the trial judge should have held an *in camera* hearing to determine whether the substance of the testimony he sought on cross-examination was relevant. We have already noted that such a hearing may be particularly appropriate in the setting of a cross-examination offer to prove. *See* Evid. R. 103(c). The trial court in the instant case, however, did not err by opting not to hold such a hearing, especially given the fact that the court did not truly have a valid "offer of proof" in process before it.

### III. Trial Court Refusal to Grant Continuance

 Arhelger finally contends that the trial court erred in refusing his oral motion for a continuance due to the unavailability of Price, whom he wished to call as a witness, but whom he had not attempted to subpoena.

Continuances are governed by Ind. Trial Rule 53.5, which provides in pertinent part:

Upon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence.... A motion to postpone the trial on account of the absence of evidence can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it; ... if it is for an absent witness, the affidavit must show the name and residence of the witness, if known, and the probability of procuring the testimony within a reasonable time, and that his absence has not been procured by the act or connivance of the party ... and that he is unable to prove such facts by any other witness whose testimony can be as readily procured.

 Arhelger did not offer an affidavit to the trial court, nor did he orally state the facts to which he believed Price would testify. "When a defendant requests a continuance due to the absence of a material witness, and the statutory criteria are met, the defendant is entitled to a continuance as a matter of right." *Macklin v. State*, 701 N.E.2d 1247, 1250 (Ind.Ct.App.1998).[13] However, when a motion for a continuance is made on non-statutory grounds or the motion

fails to meet the statutory criteria, the decision to grant or deny the motion is within the discretion of the trial court. *Id.* We will not disturb the trial court's decision absent a clear demonstration that the trial court abused that discretion. *Elmore v. State*, 657 N.E.2d 1216, 1218 (Ind.1995). Other than the bald assertion that Price was "crucial" to his case, Arhelger has made no showing, either to the trial court or on appeal, that he was prejudiced by the denial of the continuance. Nor can he assert due diligence was used to obtain Price's testimony, as he did not attempt to subpoena her for trial. *See Brumley v. State*, 492 N.E.2d 281, 283 (Ind. 1986). We find no error.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

RUCKER and BAKER, JJ., concur.

---

**13.** The "statutory criteria" to which the *Macklin* court refers are found in IND. CODE § 35–36–7–1, parts (a) and (b) of which provide:

(a) A motion by a defendant to postpone a trial because of the absence of evidence may be made only on affidavit showing:

(1) That the evidence is material;

(2) That due diligence has been used to obtain the evidence; and

(3) The location of the evidence.

(b) If a defendant's motion to postpone is because of the absence of a witness, the affidavit required under subsection (a) must:

(1) Show the name and address of the witness, if known;

(2) Indicate the probability of procuring the witness's testimony within a reasonable time;

(3) Show that the absence of the witness has not been procured by the act of the defendant;

(4) State the facts to which the defendant believes the witness will testify, and include a statement that the defendant believes these facts to be true; and

(5) State that the defendant is unable to prove the facts specified in accordance with subdivision (4) through the use of any other witness whose testimony can be readily procured.