**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Mar 20 2014, 9:15 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAMES A. EDGAR**
J. Edgar Law Offices, Prof. Corp.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES WASHINGTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1308-CR-679 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Christina Klineman, Commissioner
Cause No. 49G05-1204-FC-4086

**March 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Following a jury trial, Charles Washington was convicted of pointing a firearm and criminal mischief causing damage in the amount of at least $2,500, both Class D felonies. Washington appeals his convictions, raising two issues for our review: 1) whether the State sufficiently proved that he pointed a "firearm" as defined by statute, and 2) whether the State sufficiently proved that he caused at least $2,500 in damage. Concluding there was sufficient evidence that Washington pointed a firearm but insufficient evidence that his act of criminal mischief caused at least $2,500 in damage, we affirm in part, reverse in part, and remand.

## Facts and Procedural History

Washington and Arvenetta Washington were married for twenty-two years before separating in 2009. Washington continued to live in the marital residence on the east side of Indianapolis, and Arvenetta moved with their two sons to an apartment on the north side of town. Throughout their relationship, Arvenetta had known Washington to own various handguns which he usually carried in his vehicle.

On January 7, 2012, Arvenetta drove her vehicle to a friend's house on the east side of Indianapolis, near the marital residence, to watch football with several other people, including Kenoly Hendricks. Arvenetta and Hendricks had been acquainted in high school, but Hendricks had been in the military for twenty years and lived out of state. While Arvenetta was there, Washington called her cell phone several times but she did not answer. Eventually, Washington came to the house and asked for Arvenetta but was told she was not there. Shortly thereafter, the men in the house went outside to smoke and Arvenetta noticed that Washington had returned to the house driving their

son's vehicle. Washington yelled for Arvenetta, calling her names and threatening to take her car. When she did not come out of the house, he raised his coat, flashed a holstered gun at the men outside, and left.

Arvenetta was scared by the incident, and Hendricks offered to ride home with her. As they parked outside Arvenetta's apartment, she saw Washington also pulling into the complex. Hendricks advised her to go in the house and lock the door, which she did just as Washington slammed on the brakes and got out of his car. Washington pulled a gun on Hendricks and pointed it at his chest as he yelled threats at Arvenetta. As Arvenetta opened the door to see what was happening, Washington ran past Hendricks. Arvenetta shut the door and called 911. Washington kicked the door twice, leaving behind a footprint. Then Washington ran back to his car, took out a bat, and "started beating up" Arvenetta's car. Transcript at 129. He struck all of the windows and the headlights and then left. Police arrived shortly after Washington departed, interviewed Arvenetta and Hendricks, and took pictures of her vehicle. Arvenetta testified that she thought it was likely to cost "a few thousand dollars" to repair the damage. Id. at 179. She based that on an insurance settlement Washington had received in excess of $10,000 when he was in an auto accident during their marriage and his car was totaled, although she acknowledged the damage to his car and to her car was not similar.

The case was assigned to a detective who interviewed Arvenetta, Hendricks, and some of the people who were at the house party. He also placed two phone calls to Washington that were never returned. Neither the police at the time of the incident nor the detective on a later date attempted to obtain a search warrant to look for Washington's guns or shoes that might match the footprint left on Arvenetta's door. The

detective did discover Washington had a firearms permit and learned that two days after this incident occurred, Washington contacted police to report that his 9mm handgun had been stolen. Washington contacted police again three weeks later to say it had been found.

The State charged Washington with attempted residential entry for kicking at Arvenetta's door, a Class D felony; pointing a firearm at Hendricks, a Class D felony; and criminal mischief for causing at least $2,500 in damage to Arvenetta's car, a Class D felony.[1] A jury found Washington not guilty of attempted residential entry but guilty of pointing a firearm and criminal mischief. The trial court entered judgment of conviction accordingly and sentenced Washington to 910 days on each count, to be served concurrently, with 258 days suspended to probation. Washington now appeals his convictions.

Discussion and Decision

I. Standard of Review

When reviewing a conviction for sufficiency of the evidence, we do not reweigh evidence or reassess the credibility of witnesses. Walker v. State, 998 N.E.2d 724, 726 (Ind. 2013). We view all evidence and reasonable inferences drawn therefrom in the light most favorable to the conviction, and we will affirm "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." Davis v. State, 813 N.E.2d 1176, 1178 (Ind. 2004).

---

[1] The State also charged Washington with intimidation, a Class C felony, for a threat he allegedly made toward the owner of the house where Arvenetta was watching football. Because the owner was unable to attend the jury trial, the State moved to dismiss this charge after the jury was selected but before the presentation of evidence began.

## II. Pointing a Firearm

Washington contends the State failed to prove that the object which Arvenetta and Hendricks described Washington as having was in fact a firearm within the meaning of the statute proscribing pointing a firearm at another person. A person commits pointing a firearm when he "knowingly or intentionally points a firearm at another person . . . ." Ind. Code § 35-47-4-3(b). A "firearm" is defined by statute as "any weapon that is capable of expelling or designed to expel; or that may readily be converted to expel a projectile by means of an explosion." Ind. Code § 35-47-1-5. Because no weapon was entered into evidence and no testimony was given as to the capability or design of the weapon pointed at Hendricks, Washington contends the State failed to prove that he in fact wielded a firearm.

Washington cites Miller v. State, 616 N.E.2d 750 (Ind. Ct. App. 1993), in support of his argument that the State failed to prove the "firearm" element. In Miller, the defendant was charged with confinement while armed with a deadly weapon, "namely, a handgun[,]" which elevated the crime to a Class B felony. Id. at 754. However, the evidence was that the defendant wielded a pellet gun, which is not a handgun as defined by statute. Id. at 755. Although numerous items that are not handguns may be deadly weapons, the State limited the charge to the use of a handgun, and we therefore held the evidence was insufficient to support a guilty finding as to the elevated charge. Id. at 756.

Washington also cites United States v. Buggs, 904 F.2d 1070 (7th Cir. 1990), in which the defendant was convicted of several federal firearms offenses and contended on appeal that the government failed to prove that the pistol he was found to possess met the definition of a firearm. The government offered testimony from a veteran officer that the

5

defendant possessed a Smith and Wesson .357 magnum, the same gun he carries, and that it is "a weapon that will or is designed to or may be readily converted to expel a projectile by the action of an explosive." Id. at 1075. A second witness also testified that he saw the weapon and believed it was a .357 magnum. The court held that the evidence was sufficient to satisfy the government's burden, noting the fact that the gun was not produced at trial or that the witnesses did not have an opportunity to examine the weapon closely did not preclude the jury from weighing the evidence and determining the government proved the defendant possessed a firearm. Id. at 1075-76. Unlike these cases, Washington did not challenge the nature of the weapon he wielded, but denied that he had a weapon during the incident at all.[2] Further, contrary to Washington's assertion, neither of these cases involved a pointing a firearm charge and do not stand for the proposition that testimony is required on the specific point of whether an item qualifies as a firearm.

We have on several occasions affirmed a conviction for pointing a firearm in the absence of specific testimony regarding the weapon. In Arhelger v. State, 714 N.E.2d 659 (Ind. Ct. App. 1999), the defendant was convicted of pointing a firearm on the testimony of the victim alone that the defendant pulled a "small, black, revolver-type handgun, and pointed it directly at [his] abdomen." Id. at 661. The defendant challenged the victim's testimony as incredibly dubious and therefore insufficient to support his conviction. Noting that a conviction may be sustained on the uncorroborated testimony of the victim, and that the defendant's challenge to the victim's testimony was merely a request that we reweigh the evidence, we held that the victim's testimony that the

---

[2] We also note the jury was not instructed on the statutory definition of firearm.

defendant pointed a gun at him was sufficient to support the conviction. Id. at 663. Likewise, in C.T.S. v. State, 781 N.E.2d 1193, 1201 (Ind. Ct. App. 2003), trans. denied, we held there was sufficient evidence to support a delinquency finding for pointing a firearm based on the victim's testimony that the juvenile pulled a gun and pointed it at his stomach.

Here, Arvenetta testified that Washington had owned guns for the entire time she had known him, a period in excess of twenty years. Hendricks testified that he had seen the butt of a gun in a holster Washington flashed when he briefly appeared at the house party. Hendricks described Washington pulling the gun out of the holster and pointing it at his chest when they were later face-to-face at Arvenetta's apartment. He testified that the gun looked like a 9mm to him, and there was no question in his mind that the object Washington was pointing at him was a gun as he had "over ten thousand hours of weapons training." Tr. at 127. From that evidence, a reasonable jury could have concluded that Washington had a gun and pointed it at Hendricks, and we will not disturb that verdict.

### III. Criminal Mischief

Washington also contends the State failed to prove an essential element of criminal mischief as a Class D felony—the element of damages. The criminal mischief statute provides:

> (a) A person who:
> > (1) recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent;
> > * * *
> commits criminal mischief, a Class B misdemeanor. However, the offense is:
> > * * *

7

> (B) a Class D felony if:
> > (i) the pecuniary loss is at least two thousand five hundred dollars ($2,500) . . . .

Ind. Code § 35-43-1-2(a)(1)(B)(i). Washington contends the evidence did not prove the threshold amount of damages required to convict him of the Class D felony.

Without proof of the amount of damages, criminal mischief cannot be elevated to a greater offense. Pepper v. State, 558 N.E.2d 899, 900 (Ind. Ct. App. 1990). However, once it is established that the amount of damages is over the threshold amount set forth in the statute, the exact amount is irrelevant. Mitchell v. State, 559 N.E.2d 313, 314 (Ind. Ct. App. 1990), trans. denied. The State argues that testimony and photographic evidence of the damage Washington inflicted on Arvenetta's vehicle showing all of the windows and both headlights were broken in addition to Arvenetta's testimony that she thought the damage would cost "a few thousand dollars" to repair was sufficient for the jury to infer that the threshold amount had been reached. We disagree. The statute states a clear minimum. Arvenetta's testimony about the amount of damage to her car is based on speculation and is only a generalized estimate. "A few thousand dollars" is not necessarily equivalent to "at least $2,500." The State argues Washington is asking this court to reweigh the evidence in his favor; however, there is no evidence to weigh on this essential element of the charge, and we conclude there is insufficient evidence to convict Washington of criminal mischief as a Class D felony.

When a conviction is reversed because of insufficient evidence, we may remand to the trial court to enter a judgment of conviction on a lesser-included offense if the evidence is sufficient to support that offense. Ball v. State, 945 N.E.2d 252, 258 (Ind. Ct. App. 2011), trans. denied. Criminal mischief as a Class B misdemeanor is a lesser-

included offense of criminal mischief as a Class D felony. See Pepper, 558 N.E.2d at 900. The State presented evidence that Arvenetta's property was damaged and sufficiently proved the elements of criminal mischief as a Class B misdemeanor.[3] We therefore remand to the trial court to vacate the judgment of conviction of criminal mischief as a Class D felony, enter judgment of conviction of criminal mischief as a Class B misdemeanor, and re-sentence Washington accordingly.

### Conclusion

The State presented sufficient evidence in the form of testimony from eyewitnesses that Washington pointed a firearm at Hendricks. His conviction for pointing a firearm is therefore affirmed. The State proved that Washington caused damage to Arvenetta's car but failed to prove a specific amount of damage, and therefore Washington's conviction for criminal mischief as a Class D felony is reversed and this cause remanded to the trial court to enter judgment of conviction and sentence for criminal mischief as a Class B misdemeanor.

Affirmed in part; reversed in part; and remanded.

BARNES, J., and BROWN, L., concur.

---

[3] Although Arvenetta testified that she thought the damage would cost "a few thousand dollars" to repair, and criminal mischief is a Class A misdemeanor if the damage is at least $250 but less than $2,500, her testimony is still speculative as she demonstrated no reasonable basis for that belief.