## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 19 2015, 10:09 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
– Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Washawn Jones,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

March 19, 2015

Court of Appeals Case No.
49A02-1408-CR-580

Appeal from the Marion Superior Court
The Honorable Gary Miller, Judge
The Honorable Tiffany Vivo, Commissioner
Cause No. 49G21-1405-CM-24167

**Bradford, Judge.**

# Case Summary

[1]     On April 25, 2014, Appellant-Defendant Washawn Jones violated a protective order that was issued pursuant to Indiana Code chapter 34-26-5 for the

protection of his wife, M.U.-J. In light of Jones's violation of the protective order, Appellee-Plaintiff the State of Indiana (the "State") subsequently charged Jones with Class A misdemeanor invasion of privacy. Following a bench trial, Jones was found guilty as charged.

On appeal, Jones contends that the evidence is insufficient to sustain his conviction. Concluding otherwise, we affirm.

# Facts and Procedural History

On April 21, 2014, a protective order was issued to protect M.U.-J. from Jones. On April 22, 2014, a sheriff's deputy attempted to serve Jones with the protective order at his step-father's home. Jones's step-father signed for the order. Also on April 22, 2014, Jones texted M.U.-J. and indicated that he wanted to talk, but M.U.-J. did not respond. He then called M.U.-J., but she did not answer the telephone.

Jones went to M.U.-J.'s home at approximately 2:00 a.m. on April 25, 2014, and stood right outside her window. Later that day, Jones received a copy of the protective order between 1:00 and 2:00 p.m. when he went to the post office and signed for the copy of the order that had been mailed to him via certified mail. Soon after receiving the copy of the order that had been sent to him via certified mail, Jones returned to M.U.-J.'s residence.

M.U.-J. contacted police after Jones came to her residence for the second time that day. While police were at M.U.-J.'s residence, Jones texted M.U.-J.,

stating "b[****] i couldve killed u last night when i seen u walking in ur house with that b[****] i was in ur window b[****]" and "I see the police there b[****] they cant save u ur dead b[****]." State's Ex. 2. M.U.-J. knew that the text messages were from Jones because he had previously called and texted her from the same number, he had previously sent her similarly-phrased text messages, and the text messages resembled the way that Jones communicated with her outside of text messaging.

[6] On June 3, 2014, the State charged Jones with Class A misdemeanor invasion of privacy. The trial court conducted a bench trial on July 28, 2014, after which it found Jones guilty as charged. Also on July 28, 2014, the trial court imposed a 365-day sentence, all of which was suspended to probation with GPS monitoring. The trial court also ordered Jones to complete twenty-six domestic violence counseling sessions and to have no contact with M.U.-J. for 365 days. This appeal follows.

# Discussion and Decision

[7] Jones contends that the evidence is insufficient to sustain his conviction for Class A misdemeanor invasion of privacy.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most

favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the [judgment of the fact-finder].

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). In essence, we assess only whether the judgment of the fact-finder *could* be reached based on reasonable inferences that may be drawn from the evidence presented. *See Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). The uncorroborated testimony of a victim is sufficient evidence to sustain a conviction. *McCawley v. State*, 274 Ind. 137, 138, 409 N.E.2d 594, 596 (1980). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[8] In charging Jones with Class A misdemeanor invasion of privacy, the State alleged that:

> On or about April 25, 2014, … Jones, did knowingly or intentionally violate an order of protection, that is: A protective order issued to prevent domestic or family violence issued under [Indiana Code chapter] 34-26-5 … which was issued to protect [M.U.-J.], and furthermore, did so by engaging in the following conduct[:] sending [M.U.-J.] text messages and/or coming to [M.U.-J.]'s residence.

Appellant's App. p. 12. During trial, the State presented evidence that M.U.-J. obtained a protective order pursuant to Indiana Code chapter 34-26-5 on April 21, 2014, which prohibited Jones from "harassing, annoying, telephoning,

contacting, or directly or indirectly communicating with" M.U.-J. State's Ex. 1. The protective order further provided that Jones was "ordered to stay away from the residence, school, and/or place of employment of" M.U.-J. State's Ex. 1.

[9] In order to convict Jones of invasion of privacy, the State was required to prove that Jones knowingly or intentionally violated an order of protection that was issued under Indiana Code chapter 34-26-5. *See* Ind. Code § 35-46-1-15.1. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 34-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[10] Jones does not claim on appeal that he was not aware of the protective order that was issued against him to protect M.U.-J. Without making a specific reference to the "incredible dubiosity rule," Jones challenges the sufficiency of the evidence to sustain his conviction for invasion of privacy by arguing that M.U.-J.'s testimony was contradictory.

> Under the "incredible dubiosity rule," a court will impinge upon the jury's responsibility to judge the credibility of the witnesses only when it has confronted "'inherently improbable' testimony or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.'" *Tillman v. State,* 642 N.E.2d 221, 223 (Ind. 1994). "Application of this rule is limited to cases … where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Id.*

*Arhelger v. State*, 714 N.E.2d 659, 663 (Ind. Ct. App. 1999).

[11] Upon review, we disagree with Jones's claim that M.U.-J.'s testimony was contradictory. During trial, M.U.-J. testified that Jones came to her home at approximately 2:00 a.m. on April 25, 2014, and stood right outside her window. Jones returned to M.U.-J.'s residence later that day after receiving a copy of the protective order. M.U.-J. contacted police after Jones came to her residence for the second time that day. (Tr. 42) While police where at M.U.-J.'s residence, Jones texted M.U.-J., stating "b[****] i couldve killed u last night when i seen u walking in ur house with that b[****] i was in ur window b[****]" and "I see the police there b[****] they cant save u ur dead b[****]." State's Ex. 2. M.U.-J. knew that the text messages were from Jones because he had previously called and texted her from the same number, he had previously sent her similarly-phrased text messages, and the text messages resembled the way that Jones communicated with her outside of text messaging.

[12] Jones does not point to any specific testimony of M.U.-J. that contradicts with the above-stated testimony. In addition, we observe that the State put corroborating pictures of the text messages that M.U.-J. received from Jones into evidence. We conclude that M.U.-J.'s testimony was not incredibly dubious and that her testimony was sufficient to sustain Jones's conviction for Class A misdemeanor invasion of privacy. Jones's claim to the contrary effectively amounts to an invitation to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

[13]   The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.