James JACKSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9705–CR–348.

Supreme Court of Indiana.

July 14, 1999.

Kurt A. Young, Nashville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

A jury convicted James Jackson of murder and arson as a Class B felony. He was sentenced to consecutive terms of sixty-five years and twenty years, respectively. In this direct appeal, he raises two issue for our review: (1) whether the trial court erred by permitting the State to ask a defense witness about an incident in which she attempted to give Jackson marijuana while visiting him in jail and (2) whether the trial court's self-defense instruction constitutes fundamental error. We affirm the trial court.

## Factual and Procedural Background

On the evening of February 27, 1996, firefighters were dispatched to the apartment building where Jennifer Lawrence lived. After kicking in the locked door, they found Lawrence's burning body on the hallway floor and later a knife by the bed in the bedroom. An autopsy revealed that not only was Lawrence's body severely burned, but she had also been stabbed ten times in the abdomen. Her neck had been severely injured, suggesting that an arm, knee or lower leg had been placed across her neck for at least two to three minutes. Manual strangulation was ruled the cause of death.

Jackson and his girlfriend Michelle Lindquist occupied the apartment above Lawrence. Jackson initially told the police that he had last seen Lawrence two days before the fire when he went to her apartment to use the telephone. A few days later he agreed to go to police headquarters to be interviewed. Before giving a taped statement, Jackson offered several different unrecorded accounts of the evening of the killing.[1] His last account, which was recorded, was that he went to Lawrence's apartment on the evening of the fire and she began kissing him. When he refused her advances, she

swung a bat at him and struck him on the knee and the neck. She then went into the kitchen where she got a knife that she began swinging at him. According to Jackson, "I took the knife, the hand the knife was in and I presumed to put it down, but it went into her." Scared by these events, Jackson dropped his cigarette and left the apartment. He took a key from a keychain lying on a table and locked Lawrence's door after his exit. He later called 911 from a payphone to report a "fire," because he "wanted somebody to go there to see if she's still alive."

Jackson was charged with murder and arson. At trial he asserted that the killing was in self-defense and offered essentially the same account of events already described. The jury was instructed on self-defense but found Jackson guilty of murder as well as arson.

## I. Relevance of Witness Giving Defendant Marijuana in Jail

Jackson called Lindquist as a witness at trial. Lindquist testified that she and Jackson met Lawrence within a week after the two moved into the apartment building. She testified that Lawrence had gone out with Jackson once shortly after they met and had told Lindquist to leave Jackson alone because he was Lawrence's boyfriend. Lindquist also testified that Lawrence had threatened to "kick [Lindquist's] ass." Lindquist had known Jackson for four years, and they had lived together for almost one year before Lawrence's death. The two were married in the summer of 1996, five months after the death. In cross-examination the State asked Lindquist if she visited Jackson in jail. The following exchange took place:

[Defense counsel]:—objection. I don't see how this is relevant.

Court: Would you both approach, please?

(Inaudible conversation at the bench between the court and counsel)

---

1. "Mr. Jackson initially denied being there, being involved in this homicide. We went from not being involved to seeing witnesses, to going to the front door, to opening the front door. Another version we had is looking inside and seeing Jennifer's body. Another version we had was going inside and standing over the body. Another version we had was a physical confrontation with Jennifer, but 'She was alive when I left.' Another version of this was that, 'Yeah, maybe she was set on fire, but I'm not sure how that happened. Somebody must have came back in there and set her on fire.' "

[Defense counsel]: Could we have an oral ruling?

Court: I thought we'd make a record on it afterwards, if that's all right.

[Defense counsel]: Okay. That's fine.

The State then elicited testimony from Lindquist that she had brought marijuana to the jail to give to Jackson. It appears that the issue of admissibility of this testimony was never revisited. Jackson does not cite any subsequent discussion of this point and we find none in the record of proceedings.

■ Jackson is limited on appeal to the grounds advanced at the trial court and cannot raise new grounds for the first time on appeal. *Willsey v. State*, 698 N.E.2d 784, 793 (Ind.1998) (citing *Marshall v. State*, 621 N.E.2d 308, 316 (Ind.1993)). Relevance was the only ground advanced at trial as an objection to the marijuana delivery.[2] Jackson cites Evidence Rules 404, 608, 609, and 613, all for the first time on appeal. However, because none of these objections were made part of the trial record, we consider the admissibility of this testimony under only Evidence Rules 401 and 403. *Cf. Willsey*, 698 N.E.2d at 793 (defendant who raised only a relevancy objection at trial could not assert a 404(b) issue on appeal).

■ "[T]he standard for relevant evidence is a liberal one under Rule 401 and we review a trial court's ruling as to relevance for an abuse of discretion." *Id.* " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.

■ The State asserts that Lindquist's testimony about the marijuana incident is relevant because it demonstrates that she "would break the law and perform illegal acts for Defendant and that he exerted substantial influence over her. . . . If Lindquist would break the law for Defendant, she would certainly lie for him on the stand." This is at best a tenuous showing of relevance. Lindquist's long-standing romantic relationship with and marriage to Jackson is a more significant reason to find bias than the fact that she took marijuana to him while he was incarcerated. Rule 403 requires that the probative value of Lindquist's marginally relevant testimony be weighed against, among other things, "the danger of unfair prejudice [or] confusion of issues[.]" Jackson contends that he was severely prejudiced by the State's attack on "Lindquist's character with a prior specific act of misconduct having nothing to do with either the offense or her veracity, portraying her as a drug trafficker." Jackson further argues that Lindquist's credibility was "critical" to his

---

2. According to Professor Stroud's treatise on appellate procedure, before the adoption of the Indiana Rules of Evidence "[a]n objection such as 'incompetent, immaterial, and irrelevant' is relying on disfavored catch-words and preserves nothing on appeal. In short, an objection that preserves error is one that presents a cogent legal theory to the trial court." 4 KENNETH M. STROUD, INDIANA PRACTICE § 3.2 at 33 (2d ed.1990) (footnote omitted). This is based on many pre-Rules of Evidence cases that held that a general objection based on relevancy preserves no error on appeal. *See, e.g., Williams v. State*, 168 Ind. 87, 89, 79 N.E. 1079, 1080 (1907); *McKeown v. State*, 601 N.E.2d 462, 465 (Ind.Ct.App.1992), *overruled on other grounds by Fields v. State*, 679 N.E.2d 898, 901 n. 6 (Ind.1997); *Brinegar v. Robertson Corp.*, 550 N.E.2d 812, 818 (Ind.Ct. App.1990); *Ringley v. State*, 182 Ind.App. 424, 426, 395 N.E.2d 339, 340 (1979). According to Judge Miller's handbook on evidence,

[b]efore adoption of the Evidence Rules, Indiana courts viewed an objection that the evidence is "irrelevant" and/or "immaterial" as a general objection that preserved no grounds for appeal. To preserve the question for appellate review, counsel traditionally was required to clarify the harm that would result from admission of the irrelevant evidence. It cannot be said with certainty whether the Evidence Rules' adoption will bring any change to these requirements.

ROBERT L. MILLER, JR., COURTROOM HANDBOOK ON INDIANA EVIDENCE 47 (1999 ed.) (citations omitted). In view of Evidence Rule 401, a "relevancy" objection at trial now preserves an appellate claim of relevancy under Rule 401 and the appropriate balancing for undue prejudice under 403.

case because only he and Lindquist were aware of the threats made by Lawrence. We agree that the slight probative value of this evidence was substantially outweighed by the danger of unfair prejudice and confusion of issues.

■ The State contends that the erroneous admission of this testimony was never- theless harmless. Jackson told the police in his taped statement that was played for the jury that the knife "went into [Lawrence]" after he took it from her and "presumed to put it down," but the pathologist testified that Lawrence had been stabbed ten times in two separate episodes. Although Jackson testified at trial that during the struggle he merely held Lawrence from behind while "trying to get the knife out of her hand," the pathologist testified that her neck injuries were severe: "There was a tearing away of some of the bones and muscles indicating great force or great pressure which is applied in the neck ..... for at least 2 to 3 minutes." Jackson also claimed that his only action leading to the fire was that he dropped his cigarette in Lawrence's apartment. But the pathologist testified that the burn patterns suggested "some sort of accelerant was placed on the body to locally burn the body in those areas" and the fire investigator similarly testified that the fire was intentionally set and originated around Lawrence's body. Moreover, the jury heard the tape recording of Jackson's 911 call in which he reported a "fire" but said nothing about the need for an ambulance or injuries to a person. In light of the overwhelming evidence that negated Jackson's self-defense claim, we conclude that Lindquist's testimony regarding the marijuana incident did not contribute to the jury's verdict and its erroneous admission is therefore harmless.

## II. Self–Defense Instruction

Jackson contends that the trial court erroneously instructed the jury on the issue of self-defense. Final instructions 17 and 18 dealt with this subject. Instruction 17 was a quotation, with some language omitted, of Indiana Code § 35–41–3–2 (1998). The instruction ended with the following sentence, not found in the statute: "The State has the burden of disproving this defense beyond a reasonable doubt." As tendered by the State, instruction 18 provided:

In order to be able to exercise self defense when deadly force is used the defendant must have acted without fault, must have had a right to be where he was, and must have reasonably believed that he was in immediate danger of death or serious bodily harm. Once a claim of self defense is raised the State bears the burden of disproving self-defense beyond a reasonable doubt.

The trial court deleted the final sentence, reasoning that it already appeared in instruction 17. Defense counsel did not object.

■ Jackson's argument on appeal is that the jury should have been informed that the State was required to disprove beyond a reasonable doubt at least one of the elements of self-defense set forth in instruction 18 or that the elements of self-defense contained in instruction 18 should have been included in instruction 17. Jackson acknowledges that the failure to object to an instruction at trial ordinarily results in waiver of the issue on appeal. See Hirsch v. State, 697 N.E.2d 37, 43 (Ind.1998); Ind.Crim. Rule 8(B); Ind. Trial Rule 51(C). However, he contends that giving this instruction constituted fundamental error because it "had the effect of shifting the burden of proof to Mr. Jackson on the issue of self-defense." We disagree.

■ Instruction 17 clearly stated that the State had the burden of disproving self-defense beyond a reasonable doubt. Moreover, other instructions informed the jury that the "State has the burden of proving the defendant guilty beyond a reasonable doubt" and that the "defendant is not required to present any evidence or prove his innocence." Ideally the trial court would not have struck the last sentence from tendered instruction 18, but its absence, in light of the other instructions, cannot reasonably be believed to have led the jury to conclude that Jackson bore the burden of proving self-defense. The instruction was not fundamentally erroneous. Cf. Harlan v. State, 479 N.E.2d 569, 571 (Ind.1985) ("the jury was instructed on the State's burden to prove all of the elements of the crime charged beyond a reasonable doubt and on the elements of self-de-

fense. No separate instruction regarding the burden of proof upon the issue of self-defense was necessary.").

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.