Chris A. **LIVERMORE**, Appellant–
Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 26A05–0204–CR–162.

Court of Appeals of Indiana.

Nov. 6, 2002.

Nita Davidson–Schleter, Fort Branch, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant Chris A. Livermore ("Livermore") appeals his convictions for Class B felony dealing in methamphetamine,[1] Class D felony possession of chemical reagents or precursors with intent to manufacture methamphetamine ("possession of precursors"),[2] and Class A misdemeanor possession of marijuana.[3] We affirm in part and reverse in part.

### Issues

Livermore raises five issues for our review, which we reorder and restate as follows:

I. whether the trial court erred in denying Livermore's motion to suppress;

II. whether Livermore's girlfriend, Mary Jo Robbins ("Robbins"), voluntarily consented to a search of her house;

III. whether the trial court erred in denying Livermore's motion for mistrial;

IV. whether the trial court abused its discretion in refusing one of Livermore's tendered jury instructions; and

V. whether there is sufficient evidence to support his convictions.

### Facts and Procedural History

At approximately 10:30 a.m. on November 23, 2001, Oakland City Police Chief Alec Hensley ("Hensley") saw a truck change lanes without signaling and followed it. Hensley ran a check on the truck's license plate and determined that Livermore was the registered driver of the truck and that his Indiana operator's license had expired. When Livermore pulled into Robbins's driveway, Hensley pulled in behind him. Livermore exited his truck, approached Hensley's car, and asked him if there was a problem. When Hensley explained why he had followed Livermore and told him that his Indiana driver's license had expired, Livermore replied that he now held a valid Illinois license. By this time, Hensley had exited his cruiser and had noticed an odor he identified as anhydrous ammonia coming from Livermore's truck. As Hensley moved closer to the truck, the odor became stronger. When Hensley asked for consent to search the truck, Livermore refused. Hensley called for backup, and

---

1. Ind.Code § 35–48–4–2(a)(2)(C).

2. Ind.Code § 35–48–4–14.5(c)(2).

3. Ind.Code § 35–48–4–11(1).

Conservation Officer Bruner responded. Eventually, Conservation Officer Collier also responded.

While conversing with Hensley, Livermore put both hands into his pants pockets. Hensley noticed a bulge in Livermore's left pocket. Hensley asked Livermore to remove his hands from his pockets. Livermore initially complied, but he quickly put his left hand back into his left pants pocket. Livermore appeared to be manipulating something in the pocket. Concerned for his safety, Hensley grabbed Livermore's hand and shoulder and told him to slowly remove his hand from the pocket. After Livermore complied, Hensley patted down the pocket and felt plastic bags, a granular substance, and twist ties. Hensley then removed the pocket's contents: a lighter, a bag containing what was later identified as marijuana, six individual plastic bags tied with twist ties that were later determined to contain methamphetamine, and a small box that was later determined to contain methamphetamine, ephedrine, and pseudoephedrine.

Hensley arrested Livermore for possession of methamphetamine and placed him in the front seat of his car. Hensley then walked his police K–9 around Livermore's truck. The dog detected drugs in the vicinity of the driver's side front door and the tailgate and bumper. Hensley searched the cab of the truck and discovered a marijuana cigarette inside a black nylon knife case. When Hensley opened the tailgate, he detected a strong odor of anhydrous ammonia and ether. He found and opened a glass beverage bottle that contained a clear liquid. When opened, the bottle gave off a strong odor of anhydrous ammonia.

Robbins arrived home approximately fifteen minutes after Hensley pulled into her driveway. While Hensley was speaking with Robbins, Livermore attracted Hensley's attention by rocking the police car. Livermore claimed that Robbins had done nothing wrong and offered to show Hensley where he kept his anhydrous ammonia in Robbins's house. Livermore led Hensley and one of the conservation officers into the house. Robbins accompanied them. Livermore produced two fire extinguishers containing anhydrous ammonia and a duffel bag that contained, *inter alia*, a bottle of Liquid Fire containing sulfuric acid and a third fire extinguisher that smelled of anhydrous ammonia. Hensley then had a Gibson County sheriff's deputy transport Livermore to jail.

In the early afternoon, an Indiana State Police field team arrived and further searched Livermore's truck, finding four empty cans of starting fluid. At 3:28 p.m., Robbins signed a consent form allowing a search of her house. Several members of the Indiana State Police conducted the search, which produced another fire extinguisher containing anhydrous ammonia and a small vial containing methamphetamine. At approximately 6:00 p.m., Hensley videotaped an interview with Livermore in the booking room of the Gibson County sheriff's department. During the interview, Livermore admitted to owning the methamphetamine and marijuana found in his pocket, the fire extinguishers, the empty starting fluid cans, and the contents of the duffel bag, including the Liquid Fire. Livermore also admitted to manufacturing methamphetamine, occasionally selling it to friends, and trading it for various power tools.

On November 16, 2001, the State charged Livermore with Class B felony dealing in methamphetamine, Class D felony possession of precursors (namely anhydrous ammonia and starting fluid), Class A misdemeanor possession of marijuana, and Class C infraction failing to signal before

changing lanes.[4] On January 9, 2002, Livermore filed a motion to suppress the evidence Hensley seized from his pocket. After a hearing held on January 17, 2002, the trial court denied the motion.

After a jury trial held on February 4 and 5, 2002, the jury found Livermore guilty on the felony and misdemeanor counts.[5] On March 5, 2002, the trial court merged the possession of precursors conviction into the dealing in methamphetamine conviction for purposes of sentencing and sentenced Livermore on the dealing in methamphetamine and possession of marijuana convictions. Livermore now appeals.

### Discussion and Decision

### I. Motion to Suppress

 Livermore contends that the trial court erroneously denied his motion to suppress all evidence of the marijuana and methamphetamine Hensley seized from his pocket. For Livermore to have preserved this issue for appeal, "he must have also made a specific and timely objection to the evidence to preserve error. The trial court's denial of a motion to suppress is insufficient to preserve error for appeal." *Green v. State,* 753 N.E.2d 52, 59 (Ind.Ct. App.2001) (citations omitted), *trans. denied.* Livermore failed to object at trial when the evidence from his pocket was admitted, when Hensley testified concerning its discovery, and when Indiana State Police forensic scientist Rebecca Nickless ("Nickless") testified that the substances found in his pocket were in fact marijuana and methamphetamine. Consequently, Livermore has waived consideration of this issue.

### II. Robbins's Consent to Search of her House

 Livermore contends that the evidence seized after Robbins consented to a search of her house should have been suppressed because her consent was not voluntarily given. "The Fourth Amendment to the United States Constitution preserves the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Indiana Dep't of Revenue v. Adams,* 762 N.E.2d 728, 734 (Ind.2002) (quoting U.S. CONST. amend. IV).

Under Fourth Amendment doctrine, a threshold question is whether the defendant who claims a violation had a reasonable expectation of privacy at the time of the alleged unreasonable search and seizure. In such matters, the defendant has the initial burden of establishing that he had a reasonable expectation of privacy.

*Lander v. State,* 762 N.E.2d 1208, 1211 (Ind.2002) (citations omitted). We conclude that Livermore has failed to carry his burden. Robbins testified that although she and Livermore had lived together in the past, they had broken up some months previously, and that Livermore was not living with her at the time of his arrest. *See* Tr. at 230–31. Although Robbins testified that she and Livermore had begun dating again and that "[h]e was there[,]" she did not testify as to how often Livermore was in her house or if he had ever recently been an overnight guest. *Id.* at 229. Absent a reasonable expectation of privacy, Livermore does not have standing to challenge the voluntariness of Robbins's consent. *Cf. Hanna v. State,* 726 N.E.2d 384, 387 n. 4 (Ind.Ct.App.2000) ("In the present case, a previous relationship exist-

---

4. Ind.Code §§ 9-21-8-25, -49.

5. The record does not indicate any disposition of the Class C infraction count.

ed between Hanna and Hunt; they had been friends for five years. Hanna had stayed overnight at Hunt's apartment over twenty times within the few months before July 26, 1997. Therefore, Hanna, as Hunt's overnight guest, had a reasonable expectation of privacy in Hunt's apartment and is entitled to the protection of the Fourth Amendment.") (citations omitted).

█ Even assuming, *arguendo,* that Livermore has standing to challenge Robbins's consent to the search, he has waived consideration of this issue. A fire extinguisher containing anhydrous ammonia and a small vial that contained methamphetamine were the only items seized during the search of Robbins's house. Because Livermore did not object when the vial was offered into evidence and when Nickless testified that it contained methamphetamine, he has waived any challenge to its admissibility. *See Prewitt v. State,* 761 N.E.2d 862, 871 (Ind.Ct.App.2002) ("A party's failure to make a contemporaneous objection to evidence offered at trial precludes later appellate review of its admissibility."). Livermore did object when Indiana State Police Sergeant Gregory Oeth testified regarding the fire extinguisher and when a photograph thereof was subsequently offered into evidence, but only on the basis that the State had not proved that the extinguisher was his. "It is well-settled law in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal." *Gill v. State,* 730 N.E.2d 709, 711 (Ind.2000). Therefore, Livermore has waived any challenge to the fire extinguisher's admissibility.

### III. Motion for Mistrial

█ Livermore contends that during closing argument the prosecutor improper-

ly referred to his decision not to testify and that the trial court therefore abused its discretion in denying his motion for mistrial. "The Fifth Amendment[6] privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Davis v. State,* 685 N.E.2d 1095, 1098 (Ind.Ct.App.1997) (citation omitted and emphasis removed). However, "[a]rguments that focus on the uncontradicted nature of the State's evidence do not violate the defendant's right to remain silent." *Carter v. State,* 686 N.E.2d 1254, 1262 (Ind.1997).

During the State's closing argument, the following exchange took place:

[Prosecuting attorney]: .... Who disputed the voluntariness of [Livermore's] confession here today? [Livermore's counsel did]. That's not testimony.

What did you hear from the stand in that regard? That's all you can consider and the court will instruct you on that. That's all you heard is her saying it in final argument. You heard no evidence from the stand in that regard.

Now, the court will instruct you—

[Livermore's counsel]: Your Honor, I object. At this point I would like to make a motion out of the hearing of the jury. [Jury retires.]

....

*COURT:* Couldn't stand prosperity. You just had to do it.

[Prosecuting attorney]: Hum?

....

[Livermore's counsel]: Your Honor, the State has commented on the silence of the defendant, the failure of the defen-

---

**6.** The Fifth Amendment to the United States Constitution provides in relevant part that no person "shall be compelled in any criminal case to be a witness against himself[.]"

dant to testify. I object to any—I think it's grounds for a mistrial, your honor. *COURT:* Well, you've got to give me something a little more definite than that, if you want me to rule on it. So far you have an objection to something he said, which is sustained. Now what? [Livermore's counsel]: I don't know if the judge would find manifest necessity so if he would be retried. I move for a mistrial, your honor. *COURT:* Motion denied. Bring the jury back in. [Prosecuting attorney], you're instructed to make no further comments on the defendant and/or his failure to testify. [Prosecuting attorney]: Yes, your honor. But if I could be heard. I never said he didn't. I just said they can only consider the evidence from the stand. *COURT:* It's the same thing . . . and you know it. [Prosecuting attorney]: Yes, sir. *COURT:* Bring [the jury] in. [Livermore's counsel]: [C]an I have an admonition to disregard that? *COURT:* Absolutely. . . . [Jury returns.] Objection made by the defendant concerning the defendant's (sic) statements in final argument concerning there was no evidence from the stand concerning voluntariness of confession. The Court now sustains the objection. The jury is instructed to disregard that portion of the Prosecutor's argument. Is there anyone here [who] feels they can't disregard it? No hands are raised. The court assumes by observation of the jury that there is no harm done. Continue.

Tr. at 285–88 ("(sic)" in transcript, bracketed material added).

In other words, the prosecutor merely commented on the uncontradicted nature of the State's evidence that Livermore's confession was voluntary and did not invite the jury to draw an adverse inference from his silence at trial. *See, e.g., Ben–Yisrayl v. State,* 690 N.E.2d 1141, 1149 (Ind.1997) (holding that prosecutor's statements were not improper when "it [was] clear that he was responding to any possible implications that the defendant's confession was less than voluntary"). The trial court did not abuse its discretion in denying Livermore's motion for mistrial.

### *IV. Jury Instruction*

 Livermore contends that the trial court abused its discretion in rejecting his tendered final jury instruction number one. "Instructing the jury lies within the sole discretion of the trial court." *Flake v. State,* 767 N.E.2d 1004, 1006 (Ind.Ct.App.2002). "When a tendered instruction is refused, a court on review considers: (1) whether the refused instruction correctly stated the law; (2) whether evidence supported giving the instruction; and (3) whether it was adequately covered by other instructions." *Patton v. State,* 760 N.E.2d 672, 674–75 (Ind.Ct.App.2002) (citation and quotation marks omitted).

 Livermore's tendered jury instruction number one reads as follows: "Even though the Court admits into evidence the Defendant's inculpatory statements to police officers (confession), the jury may find that the statements were involuntarily given and disregard them." Appellant's App. at 43. This tendered instruction does not correctly state the law, for "[i]t is the role of the trial court—not the jury—to determine whether a statement made by a defendant is voluntary and therefore admissible. After a statement is admitted into evidence, it then becomes the duty of the jury to evaluate the credibility of the statement and to decide how much weight to give it." *Crain v. State,* 736 N.E.2d 1223, 1233 (Ind.2000) (citations omitted). Because we conclude

that Livermore's tendered instruction is not a correct statement of the law, we need not consider whether it is supported by the evidence or was adequately covered by other instructions. The trial court did not abuse its discretion in refusing it.

## V. Sufficiency of the Evidence

 Livermore contends that there is insufficient evidence to support his convictions for dealing in methamphetamine and possession of precursors.

Our standard of review when considering the sufficiency of evidence is well settled. We will not reweigh the evidence or consider the credibility of witnesses. Only the evidence most favorable to the verdict, together with all reasonable inferences that can be drawn therefrom will be considered. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed.

*Wilson v. State*, 754 N.E.2d 950, 957 (Ind. Ct.App.2001) (citations omitted). We address each conviction separately.

### A. Dealing in Methamphetamine

 Livermore contends that because forensic scientist Nickless was unable to specifically quantify the amount of methamphetamine in the evidence she analyzed, there is insufficient evidence that he possessed methamphetamine in an amount large enough to support an inference that he intended to deal it.

Indiana Code Section 35–48–4–2(a)(2)(C) requires that the State prove that Livermore possessed methamphetamine with the intent to deliver but does not require

proof that Livermore possessed any particular amount of methamphetamine. Nickless analyzed four of the six bags from Livermore's pocket and determined that they contained methamphetamine. As for Livermore's intent to deliver, Hensley confirmed that the methamphetamine from Livermore's pocket was packaged for sale. Additionally, Livermore admitted that he had sold methamphetamine to his friends and that he had traded methamphetamine for various power tools.[7] We conclude that Livermore's possession of methamphetamine packaged for sale and admitted history of delivering methamphetamine support the inference that he intended to deliver the methamphetamine he possessed when he was arrested. Thus, there is sufficient evidence to support Livermore's conviction for dealing in methamphetamine.

### B. Possession of Precursors

 Livermore contends that there is insufficient evidence to support his conviction for possession of precursors, and we agree. Our review of the record reveals no evidence that Livermore possessed ether. This court has said that a "conviction of an offense where evidence and reasonable inferences of a material element of the offense are totally lacking [constitutes fundamental error]." *Meredith v. State*, 439 N.E.2d 204, 208 (Ind.Ct.App.1982). "Inasmuch as this fundamental error is apparent on the face of the record, we are compelled to reverse [the defendant's] convictions *sua sponte*, although the issues he raises on appeal do not involve this error." *Id.*

Under Indiana Code Section 35–48–4–14.5(c)(2), the State was required to prove

---

7. Although Livermore claimed that he had packaged the methamphetamine in bags "so basically [he] could keep track of how much [he] used," Tr. at 107, the jury was entitled to disbelieve Livermore's evidence and to believe the State's evidence. *See Stephenson v. State,* 742 N.E.2d 463, 499 (Ind.2001).

that Livermore possessed two or more chemical reagents or precursors with the intent to manufacture methamphetamine. Initially, the State charged Livermore with possession of anhydrous ammonia and starting fluid; at trial, the State moved to amend the charging information, replacing "starting fluid" with "ether".[8]

At most, the State established that Livermore possessed four *empty* cans of starting fluid. During the interview with Livermore, Hensley asked him if he possessed the "*empty* ether cans or starting fluid cans" recovered from his truck. Tr. at 109–10 (emphasis added). Indiana State Police criminal analyst Daniel Corbert testified that "Starting Fluid cans" were recovered from the truck but did not state whether the cans contained any starting fluid or ether. *Id.* at 172; *see also id.* at 173, 176. The only evidence suggesting the presence of ether was Hensley's testimony that he could smell "an odor of anhydrous ammonia and starting fluid or ether" as he stood near Livermore's truck. *Id.* at 47. Absent any evidence that Livermore possessed

receptacles containing ether or an ether-containing substance, testimony regarding an odor of ether is insufficient to prove the possession of ether. We therefore reverse Livermore's conviction for possession of precursors.[9]

Affirmed in part and reversed in part.

KIRSCH, J., and DARDEN, J., concur.

---

**8.** Although it contains ether, starting fluid is not listed as a chemical reagent and precursor in Indiana Code Section 35–48–4–14.5(a). The listed chemical reagents and precursors are (1) ephedrine; (2) pseudoephedrine; (3) phenylpropanolamine; (4) the salts, isomers, and salts of isomers of a substance identified in subdivisions (1) through (3); (5) anhydrous ammonia or ammonia solution; (6) organic solvents; (7) hydrochloric acid; (8) lithium metal; (9) sodium metal; (10) ether; (11) sulfuric acid; (12) red phosphorous; (13) iodine; (14) sodium hydroxide; (15) potassium dichromate; (16) sodium dichromate; (17) potassium permanganate; and (18) chromium trioxide. For the State to prove that possession of starting fluid constitutes the possession of ether, it must also establish that starting fluid contains ether. *Cf. Dolkey v. State,* 750 N.E.2d 460, 462–63 (Ind.Ct.App. 2001) (holding that proof of possession of rubbing alcohol without proof that rubbing alcohol is an organic solvent is insufficient to

prove possession of an organic solvent, a chemical reagent or precursor listed in Indiana Code Section 35–48–4–14.5(a)). In the instant case, several witnesses testified that starting fluid contains ether. *See, e.g.,* Tr. at 172.

**9.** The State did establish that Livermore possessed Liquid Fire containing sulfuric acid, which is a precursor listed in Indiana Code Section 35–48–4–14.5(a). We note, however, that the State did not charge Livermore with possession of sulfuric acid. "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute *the crime with which he is charged.*" *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (emphasis added).