George D. KING, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0301–CR–37.

Court of Appeals of Indiana.

Nov. 24, 2003.

**44**

Victoria B. Eiger, Nathan Z. Dershowitz, Dershowitz, Eiger, & Adelson, P.C., New York, NY, Brent Westerfeld, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant George D. King appeals his convictions for two counts of attempted murder,[1] a Class A felony. We affirm.

---

1. Ind.Code §§ 35–41–5–1, 35–42–1–1.

## Issues

King presents five issues for our review, which we restate as follows:

I. Whether the State presented sufficient evidence to support his attempted murder convictions;

II. Whether the trial court erred in denying his motion for mistrial;

III. Whether the trial court erred in limiting cross-examination of a witness;

IV. Whether the trial court abused its discretion in admitting certain evidence; and

V. Whether the trial court abused its discretion in refusing his tendered jury instruction.

## Facts and Procedural History [2]

King and Kay King ("Kay") are brother and sister. Their father, George King ("George"), was a multimillionaire.[3] In 1999, Kay worked for George's investment company, and he gave Kay power of attorney. King lived with George at his residence in Indianapolis. Kay and King had a strained relationship and often quarreled over who would control George's multimillion-dollar estate after his death.

In the summer of 2000, Kay and King clashed. King yelled, "I'm going to kill you." Tr. at 194. Dana Miller, George's nursing aid, witnessed part of the fight. Miller heard Kay ask King, "Are you going to shoot me?" *Id.* at 570. Miller saw King nod his head affirmatively and respond, "Yeah." *Id.*

In October 2001, Kay saw King remove mail from her mailbox. During the same timeframe, one of Kay's neighbors saw King's car stop at Kay's mailbox on numerous occasions. Later, Kay learned that change-of-address orders had been executed with the post office that changed the delivery of her investment and trust accounts to George's address, where King lived.

On the evening of November 14, 2001, Kay's fifteen-year-old son, C.K., drove her home from his confirmation class. C.K. pulled into their garage and turned off the car. As C.K. and Kay sat talking, a man wearing a ski mask and trench coat appeared on the passenger side of the car. He had his right hand covered with a fast-food sack. The man removed the sack and fired a revolver at Kay and C.K. through the passenger window. C.K. was shot twice, in his neck and shoulder. Kay was shot five times; she sustained injuries to her face, shoulder, and hand. C.K. restarted the car and backed out of the garage. The assailant pursued them and continued to fire at Kay and C.K. as they drove away. Kay's neighbors reported seeing a thin man, with a stature similar to King's, wearing dark clothing and running away from Kay's garage that night.

C.K. sought help at a nearby fire station. Firefighters administered medical aid to Kay and C.K. before they were transported to the hospital. When firefighters questioned Kay and C.K. as to the identity of their attacker, they both identified King as the assailant. *Id.* at 469, 480, 485. Marion County Sheriff's Deputy Bradley Beaton interviewed C.K. at the fire station. C.K. told Deputy Beaton that King had shot him and his mother. C.K. said that he recognized King as the assailant because of his eyes, mouth, and build. *Id.* at 718. Later at the hospital, Marion

---

**2.** We remind King's counsel that the statement of facts in an appellate brief should be a concise narrative of the facts stated in accordance with the standard of review appropri-ate to the judgment and should not be argumentative. *See* Ind. Appellate Rule 46(A)(6).

**3.** George died in December 2001.

County Sheriff's Department Detective John Maloney interviewed Kay and C.K. separately; both identified King as the attacker. *Id.* at 732, 734.

On January 9, 2002, the State charged King with attempted murder, aggravated battery[4] as a Class B felony, battery[5] as a Class C felony, and carrying a handgun without a license[6] as a Class A misdemeanor. On August 20, 2002, after reviewing Kay's medical records, King moved for a mistrial so that he could investigate whether Kay's identification testimony was a product of hypnosis. The trial court denied King's motion. On August 22, 2002, a jury found King guilty on all counts. The trial court entered judgment of conviction only on the two attempted murder counts. King now appeals.

### Discussion and Decision

### I. Sufficiency of the Evidence

■ King challenges the sufficiency of the evidence supporting his attempted murder convictions. King contends that the identification evidence is unreliable because Kay and C.K.'s recorded statements to police, a month after the shooting, were more descriptive than the statements they initially gave to firefighters and police after the incident. Appellant's Br. at 20–21.

Our standard of review when considering the sufficiency of evidence is well settled. We will not reweigh the evidence or consider the credibility of witnesses. Only the evidence most favorable to the verdict together with all reasonable inferences that can be drawn therefrom will be considered. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed.

*Livermore v. State,* 777 N.E.2d 1154, 1161 (Ind.Ct.App.2002) (citations omitted).

■ Immediately after the shooting, Kay and C.K. identified King as the assailant to firefighters who administered medical aid to them. Tr. at 469, 480, 485–86. At the fire station, C.K. told Deputy Beaton that King had shot him and Kay. *Id.* at 718. Later at the hospital, Kay and C.K. told Deputy Maloney that King was the assailant. *Id.* at 732, 734. Kay and C.K. stated that King wore a ski mask and trench coat during the shooting but that they recognized him because of his eyes, frame, posture, and hands. *Id.* at 226–28, 422–23. Kay and C.K. testified that King shot them several times with a revolver. *Id.* at 217–23, 414–16. In all of their statements, Kay and C.K. unequivocally identified King as their assailant. *Id.* at 469, 480, 485, 732, 734, 216, 412. We decline King's invitation to reweigh the evidence and assess the credibility of witnesses. The identification evidence is sufficient to support King's convictions for attempted murder. *See Hubbard v. State,* 719 N.E.2d 1219, 1220 (Ind.1999) (finding victim's testimony sufficient to support attempted murder conviction).

### II. Denial of a Mistrial

■ On the second day of trial, King moved for a mistrial. He claimed that Kay was hypnotized before giving her recorded statements to police and that, before hypnotically refreshed testimony could be admitted, the court needed to conduct an evidentiary hearing to determine the nature of the hypnosis. Tr. at 253–54. King contends that the trial court abused its discretion in denying his motion for mistrial. "A mistrial is an extreme remedy warranted only when no other cu-

---

**4.** Ind.Code § 35–42–2–1.5.

**5.** Ind.Code § 35–42–2–1.

**6.** Ind.Code § 35–47–2–1.

rative measure will rectify the situation." *Kirby v. State*, 774 N.E.2d 523, 533 (Ind. Ct.App.2002), *trans. denied* (2003). "The determination of whether to grant a mistrial is within the trial court's discretion, and we will reverse only for an abuse of that discretion." *Id.* An abuse of discretion has occurred if the court's decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* at 534. "When determining whether a mistrial is warranted, we must consider whether the defendant was placed in a position of grave peril to which he should not have been subjected." *Id.* "The gravity of the peril is determined by the probable persuasive effect of the matter complained of on the jury's decision." *Id.* Moreover, a defendant is limited to the grounds advanced at trial and may not raise a new ground for objection for the first time on appeal. *Jackson v. State*, 712 N.E.2d 986, 988 (Ind.1999).

At trial, King made an offer of proof and inquired into the nature of Kay's medical treatment while hospitalized. Specifically, King asked Kay about an annotation in her medical record which read:

> [Patient] states once she calmed down, she was able to breath. [Discussed] possibility of panic attacks & educated her as to what happens [with] a panic attack. Told her to also mention her symptoms to her M.D. [Patient] was responsive to clinical hypnosis & was able to obtain good level of relaxation. Offered reassurances [regarding] her safety, discussed son's situation & his return to school.

Appellant's App. at 192–93.

▮ Kay denied that she was hypnotized. Tr. at 260. Kay explained that she was having problems breathing and experienced panic attacks. *Id.* at 262–64. Kay testified that a health care provider instructed her on relaxation techniques and breathing exercises to help her alleviate her symptoms. *Id.* King did not establish that Kay was hypnotized. Moreover, Kay unequivocally identified King as her assailant before giving her recorded statements to police. To the extent King argues on appeal that Kay's identification testimony was inadmissible under Indiana Evidence Rule 602,[7] he has waived this argument. The trial court did not abuse its discretion in denying the mistrial because the facts do not demonstrate that King was placed in a position of grave peril by Kay's identification testimony.

## III. Limitation of Cross-examination

Prior to giving their recorded statements to police, Kay and C.K. met with an attorney. King contends that he was precluded from questioning C.K. about the details of his conversations with the attorney regarding the shooting. King asserts that the trial court abused its discretion in limiting his cross-examination of C.K. At trial, the following exchange took place between King's counsel and C.K.:

Q. All right. And before then, your mother had hired a lawyer, isn't that correct?

A. Yes.

Q. A fellow by the name of Bob Saint?

A. Yes.

Q. And Mr. Saint took you through a lot of the details of this, did he not?

---

7. Indiana Evidence Rule 602 provides in relevant part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. A witness does not have personal knowledge as to a matter recalled or remembered, if the recall or remembrance occurs only during or after hypnosis."

Mr. Dickerson [the State]: Well, I'm going to object to that, Judge. Anything that—if he's implying that something was said to him, I'm going to object to it as hearsay, and that's the way I understand the question, that he was—

The Court: Hearsay objection. Response?

Mr. Kammen [defense counsel]: I'm not asking for the contents. I'm just asking for the fact.

The Court: Well, if you ask him what he talked about, that includes—

Mr. Kammen: He just—he had a conver—it's not offered clearly for the truth of the matter asserted.

The Court: You can ask him whether he spoke with Mr. Saint. As to what they spoke about will not be admitted. All right? So the—

Q. Well, you spoke with Mr. Saint about these events, didn't you?

The Court: Sustained.

A. Uh—

Mr. Kammen: No, don't answer that.

Q. In any event, on December 12th, you had a conversation with Detective Maloney, correct?

A. Yes.

Tr. at 440–41.

■■■ King argues that the trial court erred in preventing him from challenging C.K.'s testimony as a product of "coaching." Appellant's Br. at 16. The right to cross-examine is a fundamental right of our criminal justice system. *West v. State*, 755 N.E.2d 173, 183 (Ind.2001). Nonetheless, trial judges retain wide latitude to impose reasonable limits based on concerns about harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Id.* at 183–84. To preserve a trial court's allegedly erroneous exclusion of evidence for appeal, it is "appropriate and necessary for counsel to make an offer of proof on cross-examination if she believes the trial court has limited a line of questioning or has erroneously sustained an objection by opposing counsel." *Arhelger v. State*, 714 N.E.2d 659, 666 (Ind.Ct.App.1999); *see also* Ind. Evidence Rule 103. "The offer may be made immediately upon the judge's sustaining of opposing counsel's objection, or before the judge rules on the objection." *Id.* The offer must (1) make the substance of the excluded evidence or testimony clear to the court; (2) identify the grounds for admission of the testimony; and (3) identify the relevance of the testimony. *Id.* However, Indiana Evidence Rule 103(a)(2) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked."

■■■ Here, King's counsel made no offer of proof before or after the trial court sustained the State's objection to the line of questioning. The substance of the evidence he sought to elicit from C.K. was not apparent from the context of King's questions. King failed to create a record for our review as to the substance and nature of the precluded testimony. Therefore, he has waived this issue on appeal. *See West*, 755 N.E.2d at 173.

### IV. Admission of Evidence

■■■ Kay's employee Howard Harrison testified that after the shooting, he saw King watching the hotel where Harrison worked, a place Kay was known to visit. King argues that the trial court abused its discretion in admitting Harri-

son's testimony because it was irrelevant, highly prejudicial, and inadmissible character evidence. "A trial court is vested with broad discretion in ruling on the admissibility of evidence." *Edmond v. State*, 790 N.E.2d 141, 144 (Ind.Ct.App.2003), *trans. denied.* An error in admission of evidence will not result in reversal of a conviction if the error is harmless. *Id.* "An error will be viewed as harmless if the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights." *Id.* at 144–45.

■ On appeal, King contends for the first time that Harrison's testimony should have been excluded under Indiana Evidence Rule 404(b).[8] A defendant is limited to the grounds advanced at trial and may not raise a new ground for objection for the first time on appeal. *Jackson*, 712 N.E.2d at 988. King objected to the evidence at trial under relevance and prejudice grounds. Accordingly, he has waived his Rule 404(b) claim.

We will consider the admissibility of Harrison's testimony only under Indiana Evidence Rules 401 and 403. Evidence Rule 401 provides, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Evid. R. 403.

■ The State contends that Harrison's testimony was relevant to confirm King's identity as the person who shot

Kay. The State argues that the evidence created a reasonable inference that King was looking for Kay after the shooting, when she was in hiding. King counters that the evidence was irrelevant and that its prejudicial effect substantially outweighed its probative value. The State's argument is tenuous at best, but given the victim identification evidence presented at trial, it is unlikely that Harrison's testimony substantially influenced the jury's verdict. The trial court's error, if any, in admitting Harrison's testimony was harmless.

## V. Jury Instruction

King argues that the trial court's witness credibility instruction was one-sided and misleading because it did not advise the jury that it could reject a witness's perjured testimony. He contends that the trial court abused its discretion in refusing his "falsus in uno" instruction because it was a correct statement of the law and supported by the evidence. King tendered the following instruction on witness credibility:

If you should believe from the testimony in this case that any witness or witnesses have willfully and intentionally testified falsely as to any material fact in the case, intending by such false testimony to mislead and deceive as to the truth in the case, you may under such belief disregard the whole or any part of the testimony of such witness or witnesses if, in your opinion, you are justified under your oath in so doing and except insofar as the same be corroborated by other credible testimony.

---

**8.** Indiana Evidence Rule 404(b) provides in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

Appellant's App. at 107. The trial court refused King's instruction and gave this instruction:

> You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witnesses, you may take into account his or her ability and opportunity to observe; the memory, manner, and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in light of all evidence in the case.
>
> You should attempt to apply the evidence to the presumption that the defendant is innocent and the belief that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. However, if you find that the testimony of a witness is so unreasonable as to be unworthy of belief, or if you find conflict between the testimony of the witnesses to the extent that you cannot believe all of them, then you must determine which of the witnesses you will believe and which of them you will disbelieve.
>
> In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience, and common sense gained from day to day living. You may find that the number of witnesses who testify to a particular fact, on one side or the other, or the quantity of evidence on a particular point is in conflict with your own determination of the truth, and in such case you should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

Appellant's App. at 97. The trial court also gave this instruction:

> Evidence that on some former occasion, a witness made a statement or statements that were inconsistent with his testimony in the trial, may be considered by you not only for the purpose of testing the credibility to the witness, but also as evidence as to the truth of the facts as stated by the witness on such former occasion.

Appellant's App. at 115.

 It is well settled that the manner of instructing a jury is left to the sound discretion of the trial court; we will reverse only if the court abuses that discretion. *Smith v. State*, 777 N.E.2d 32, 34 (Ind.Ct.App.2002), *trans. denied.* An abuse of discretion occurs if the instructions, considered as a whole and in reference to each other, mislead the jury as to the applicable law. *Chambers v. State*, 734 N.E.2d 578, 580 (Ind.2000). A trial court does not abuse its discretion in refusing a defendant's instruction where the substance of the proposed instruction is covered by other instructions given to the jury. *Id.* at 581. In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction correctly states the law; whether there is evidence in the record to support the giving of the instruction; and whether the substance of the tendered instruction is covered by other instructions that are given. *Smith*, 777 N.E.2d at 34.

 Here, the trial court's instructions informed the jury that it was the exclusive judge of the credibility of witnesses and that with careful consideration it could disregard the testimony of any witness if it had reason to do so. Appellant's App. at 97, 115. This instruction sufficiently informed the jury of its obligation to judge the credibility of witnesses. Moreover, the trial court's instructions were correct

statements of law and adequately covered the substance of King's rejected instruction. The trial court did not abuse its discretion in giving a broader instruction on witness credibility than that proposed by King. *See Chambers,* 734 N.E.2d at 581 (concluding that trial court did not abuse its discretion in refusing to dwell on point raised by defendant's proposed instruction).

Affirmed.

BAKER, J., and SHARPNACK, J., concur.