## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2019, 9:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melinda K. Jackman-Hanlin
Greencastle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cristhian J. Garcia,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 30, 2019

Court of Appeals Case No.
18A-CR-1895

Appeal from the Hendricks
Superior Court

The Honorable Mark A. Smith,
Judge

Trial Court Cause No.
32D04-1708-MR-2

**Bailey, Judge.**

# Case Summary

[1] Cristhian Garcia ("Garcia") challenges his convictions, following a jury trial, for murder, a felony,[1] and attempted murder, a Level 1 felony.[2] He raises only one issue on appeal, namely, whether the State presented sufficient evidence to support his murder and attempted murder convictions.[3]

[2] We affirm.

# Facts and Procedural History

[3] On August 15, 2017, Garcia's wife, Alicia Canizales Rios ("Rios"), and Jesus Huesca Moreno ("Moreno") were shot at a Home Goods warehouse in Brownsburg. Rios survived her injuries, but Moreno died from his injuries. On August 17, the State charged Garcia with the murder of Moreno, attempted murder of Rios, aggravated battery, and a firearm enhancement. At Garica's three-day jury trial that began on June 12, 2018, the following evidence was presented.

[4] In the late evening of August 15, 2017, Garcia argued with Rios in their home and refused to give Rios her car keys so that she could go to work. Rios called

---

[1] Ind. Code § 35-42-1-1.

[2] *Id.*; I.C. § 35-41-5-1.

[3] Garcia does not appeal his firearm enhancement. And, although he purports to appeal his aggravated battery conviction, the trial court vacated that conviction. App. at 16.

Moreno, with whom she was romantically involved, and asked him to give her a ride to work. When Moreno arrived to pick Rios up, Garcia confronted Moreno about Moreno's relationship with Rios. Moreno subsequently drove Rios to her place of employment, the Home Goods warehouse in Brownsburg. In the meantime, Garcia contacted Julio Bonilla ("Bonilla") who lived with Garcia and Rios, and asked Bonilla to give him a ride to Rios' place of employment. Bonilla did so, and GPS coordinates obtained from Garcia's cellular phone confirmed that he arrived at the Home Goods warehouse at 9:57 p.m. that same day.

[5] When Rios and Moreno arrived at the Home Goods warehouse and parked behind it, Rios noticed Bonilla's vehicle parked there as well. Rios saw Garcia exit Bonilla's vehicle with a gun in his hand and approach Moreno and Rios. Another Home Goods employee, Irahi Ruiz ("Ruiz"), was also parked in the same area at that time and also saw Garcia exit the vehicle with a gun and approach Moreno and Rios. Rios and Ruiz then saw Garcia shoot Moreno. Rios, Ruiz and Bonilla all also saw Garcia then shoot Rios. Garcia then ran back to Bonilla's vehicle, held his gun up to Bonilla's head, and demanded that Bonilla drive to Garcia's father's house. The GPS tracking location on Garcia's cellular phone indicated that Garcia left the warehouse location at 10:08 p.m. and arrived at his father's home at 10:42 p.m.

[6] When Bonilla and Garcia arrived at Garcia's father's home, Garcia told Bonilla to back into the driveway and remove the license plate from the vehicle they had driven. Once inside the home, Garcia told his father and brother that he

shot Rios, and when local news began to cover the shooting, Garcia stated that he shot Rios's "lover." Tr. Vol. III at 46-47. Garcia told his brother that he hid the revolver in the basement of the house inside a container with bleach, and Garcia repeatedly told Bonilla not to say anything about what he had witnessed.

[7] The following morning, after a night during which law enforcement cordoned off the block where Garcia and Bonilla lived, Garcia and Bonilla ran out the back door of their house, got into a silver Infiniti, and led police on a high-speed chase before the vehicle was stopped and Garcia was arrested. Prior to the arrest, Garcia again instructed Bonilla not to say anything to the police.

[8] After obtaining information from Bonilla about the crime and Garcia's plan to hide the murder weapon in the basement, law enforcement officers executed a search warrant and discovered a nickel-plated Taurus .38 special revolver in a bucket of bleach in the basement crawlspace of Garcia's father's house.

[9] The jury found Garcia guilty as charged. At sentencing, the trial court vacated the aggravated battery conviction. The court sentenced Garcia to sixty years for his murder conviction enhanced by ten years for the firearm enhancement, and thirty years for his conviction for attempted murder, with the sentences to be served consecutively. This appeal ensued.

# Discussion and Decision

[10]     Garcia challenges the sufficiency of the evidence to support his convictions for murder and attempted murder. Our standard of review for the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*. Moreover, "[a] conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*. And a conviction may be sustained on only the uncorroborated testimony of a single witness. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[11]     To support Garcia's conviction of murder, the State was required to show that Garcia (1) knowingly or intentionally (2) killed (3) Moreno. I.C. § 35-42-1-1(1). To support Garcia's conviction of attempted murder, the State was required to show that Garcia (1) acting with the intent to kill (2) engaged in conduct constituting a substantial step toward the commission of the crime of murder.

*See, e.g.*, *Osborne v. State*, 754 N.E.2d 916, 924 (Ind. 2001). The requisite intent to kill "may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury." *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008).

[12] The State provided evidence that three eyewitnesses—Rios, Ruiz, and Bonilla—saw Garcia shoot Moreno, who eventually died from his wounds. The State also presented evidence that two eye-witnesses—Rios and Ruiz—saw Garcia shoot Rios. That evidence alone is sufficient to support Garcia's murder and attempted murder convictions. *See Green v. State*, 756 N.E.2d 496, 497 (Ind. 2001) ("The testimony of a single eyewitness to a crime is sufficient to sustain a murder conviction."); *King v. State*, 799 N.E.2d 42, 46 (Ind. Ct. App. 2003) (holding the victims' unequivocal identifications of defendant as the person who shot them were sufficient to support convictions for attempted murder), *trans. denied*.

[13] However, the eyewitness testimony was bolstered by: evidence that Bonilla heard Garcia say that he shot Rios and Rios's "lover," Tr. Vol. III at 47; evidence that Bonilla heard Garcia tell his brother that Garcia had put the gun in the basement of Garcia's father's house in a bucket with bleach, and police later found the gun in that house in a bucket of bleach, *id*. at 47-48, 62-63, 74-76, 83; State's Ex. 95-97; and GPS evidence that placed Garcia at the scene of the crime at the time of the shootings, Tr. Vol. III at 27-32.

[14]    There was sufficient evidence to support Garcia's convictions for murder and attempted murder.  Garcia's contentions to the contrary are simply requests that we reweigh the evidence, which we cannot do.  *Clemons*, 996 N.E.2d at 1285.

[15]    Affirmed.


Bradford, J., and Brown, J., concur.